Seward, J.
(orally).
This case involves a difficult question and has given the court a good deal of trouble. It is a proceeding by the plaintiff to enjoin Frank Malinski from landing his boat or receiving passengers for hire from the pier of the plaintiff, at Buckeye lake. The Columbus, Buckeye Lake & Newark Traction Company procured from the board of public works of Ohio the right to erect *375 their road and maintain docks — that is, they claim they have the right to erect and maintain docks and bath houses at Buckeye lake. As to whether they are entitled to an injunction, depends upon the lease which they have procured from the board of public works, as to the authority of the board of public works to make the lease, and as to the powers contained in the lease.
It is well settled in Ohio that the board of public works can grant no leases or title to real estate which belongs to the state of Ohio, unless they are authorized to do so by an act of the Legislature.
The Legislature has passed a law granting to the board of public works certain powers in relation to land owned by the state. It is contained in Section 218-225; and I presume if the power to grant this lease to the Columbus, Buckeye Lake & Newark Traction Company is not contained in Section 218-225, whatever is not contained in this section the grantees or lessees do not get title to. It is in 94 Ohio Laws:
‘ ‘ That each and every tract of land, and any part of the berme bank of any canal, canal basin, reservoir and outer slope of the towing path embankment, which said commission [that is, the canal commission] shall find to be the property of the state of Ohio, the use of which, in the opinion of said commission, the board of public works and the chief engineer of the public works, if leased, would not materially injure or interfere with the maintenance and navigation of any of the canals of this state, shall be valued by said commission at its true value in money, and if such land shall not then be under an existing lease, may be leased for any purpose or purposes other than for railroads operated by steam, but said commission, the board of public works and the chief engineer of the public works, shall have power to make leases and prescribe regulations for the crossing of the canals, canal basins, or canal lands by any railroad operated by steam, electricity or other motive power, or for the necessary use, for railroad purposes, of any part of the berme' banks of a canal, canal basin -or any portion of the canal lands for a distance not exceeding two miles, or if then under an existing lease, then at the expiration of such lease, may be leased on the terms and conditions hereinafter in this act provided for.”
Now, if the board of public works have any power to make this lease, they get it from that act of the Legislature; otherwise they are powerless, because they can not make any lease without authority of the Legislature.
*376 The question for the court to determine is for what purpose they did lease it. I read such portions of this lease as apply:
‘ ‘ This indenture of lease made and entered into tihs 9th day of July, 1901, at the city of Columbus, in Franklin county, Ohio, by and between the state of Ohio, through its authorized agents, the board of public works, the chief engineer of the public works and the canal commission, all officers of the state of Ohio, acting for and on behalf of said state, under and by virtue of an act of the General Assembly of Ohio, passed March 28th, 1888, and the several acts amendatory thereof and supplementary thereto, as amended • April 16th, 1900, party of the first part, and the Columbus, Buckeye Lake & Newark Traction Company, a corporation organized under the laws of the state of Ohio, party of the second part, witnesseth that,
‘ ‘ Whereas, the party of the first part owns by title in fee simpie the land hereinafter described, and the same is not now under an existing lease, and whereas,' said party of the second part proposes to build an electric railroad as set forth in its application, and whereas, in order to build the same it is necessary to cross the state lands hereinafter described, and
“Whereas, the party of the second part has applied to the party of the first part for permission to construct, maintain and operate an electric railway of standard gauge, and erect station houses, bath houses, construct docks and landings upon certain portions of the embankment and water front of Buckeye lake, formerly known as the Licking Reservoir, in Licking and Fairfield counties, in the state of Ohio. ’ ’
Now, unless the word “water-front” includes the body of water, then, as the court construes it, they would have no right, under this lease, to project a dock, or whatever it might be called, into the water. A water-front is defined to be the land surrounding a body of water, or facing upon a body of water. That’ is what a water-front is.
The lease then recites what portion, commencing at a certain station “there is granted to the party of the second part for the term of fifteen years, for station, bath house and dock purposes, the following described tracts or parcels of land,' to-wit:” One of the questions raised is as to whether they have a right to put a pier there. It is in evidence that this pier runs out into the lake about eighty feet, and is twenty feet wide. They are granted “the inner and outer slopes of the embankment and water-front of said Buckeye lake, commencing at station 214.57 of said Row’s *377 survey of said lake, and extending thence westerly 450 feet to station 209.07,” and several" other parcels.
“The party of the second part shall locate and construct its road, bridges, docks, landings and other structures under the directions of the chief engineer of the public work§ of Ohio, acting under authority of the state board of public works of Ohio, and in accordance with profiles, plans and specifications to be approved by said chief engineer, duplicate copies of which shall be filed in the office of the state board of public works, and at such height above the standard water level of said lake as said chief engineer may deem necessary for the proper protection of' said reservoir embankment. ’ ’
All the rest of the lease refers to the construction of the road, and to the rights of the parties in ease another road is applied for to the board of public works, and gives the party of the first part, which is the board of public works, the right to lease the ground to other railroad companies.
Now, as the court has said, the board of public works have only such power as is granted them by the statutes.
In 37 Ohio State, 157, The State of Ohio, ex rel The Attorney-General, v. The Cincinnati Central Railway Company, the syllabus reads:
“The board of public works or the state is not authorized by law to grant to a railroad corporation the right’ to lay its track and to maintain and operate a railroad, on and along the berme bank of a navigable canal belonging to the state.”
And on page 174 the court says:
“The board of public Avorks possesses no powers except such as are expressly conferred by law, or as are necessarily implied, the purpose of which is to perfect, render useful, maintain, keep in repair and protect and make the canals useful as navigable higliAvays. It may be conceded that the state has power to sell, lease or abandon them. It may grant easements or rights for other public uses. It may by neglect or by unfriendly legislation impair or destroy their usefulness. It may also be true that in these days of improved methods of commercial intercourse, canals are relatively of minor public importance, but so long as the present policy of the state, as shown by its laws, stands, the courts must carry out that policy. It is for the Legislature, not for the board of public works, nor for the courts to change it.
*378 ‘ ‘ The most cursory examination of the numerous provisions of law relating to the public works of the state will show, that while the Legislature has freely granted the largest powers to the board for this purpose, it has at the same time, by regulations, prohibitions and penalties, sought to guard this property from all encroachments, individual or corporate, and to prevent the acquisition of rights or easements in the canal or its banks except by express authority of laws passed for that purpose. The board of public works possess no power to grant rights, easements or privileges for private advantage, unless expressly authorized by law. The statutes authorizing the abandonment or 'sale of certain sections of the canals, the transfer to railroads and cities for their purposes, of other sections, the permission granted by statute to use the berme bank in certain instances, the leasing of the canals, the leasing of surplus water, the sale of ice, and the restrictions as to crossing by public roads, and by railroads, all show that the board in the opinion of the Legislature possessed no implied power to grant rights and privileges, or to create easements of burdens upon this public property in favor of individuals or corporations. In each of these eases express authority was conferred by statute.
“As already stated, Section 3283 is substantially the same, as to the power to agree for the use of public roads, etc., as Section 11 of the act of February 11, 1848, which was the general act relating to and regulating railroads prior to 1852. This act antedates most of the present statutes relating to the powers and duties of the board of public works. The latter may therefore be regarded as the latest expression of the legislative intent, and the limitations and restrictions on the powers of the board therein contained must not be lost sight of in the construction of Section 3283, as they clearly demonstrate that neither Section 11 of the .act of 1848, nor Section 3283 of the revision conferred this power. ’ ’
Now, in this case they attempted to construe the word “way” as applying to a canal. The Supreme Court holds that it does not mean a canal, and that they had no authority to use the berme bank of the canal for the construction of this railroad.
Now, have the Legislature given this company the right to use the water of the reservoir for the purpose of building their dock? The only property described is the berme bank — the bank of the reservoir. The berme bank is the bank opposite to the tow-path. Have they any right to build a pier out into the reservoir? They have the right to use the embankment. *379 They have granted them the right to land there for station purposes. They have granted them the right to use the land for the purpose of building a bath house, but have they granted them the right to run their pier eighty feet out into the lake? While the court would be glad to hold that they have, the'court can not so find, and this injunction will be dissolved, and the petition dismissed. You may have exceptions, and the court fixes the bond for appeal at $50.